# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF NEW MEXICO

PHILADELPHIA INDEMNITY
INSURANCE COMPANY, a Pennsylvania
corporation,

          Plaintiff,

vs.

DESERT UTILITY & PAVING, LLC, a New
Mexico limited liability company;
CENTURY CLUB CONSTRUCTION, LLC,
a New Mexico limited liability company;
JWEB CONSTRUCTION, LLC, a New
Mexico limited liability company; JEFFREY
S. WEBSTER, an individual; BENNIE A.
CRUZ, an individual,

          Defendants.

Case No.:

---

## COMPLAINT

---

For its complaint against defendants, and each of them, (collectively "Defendants") Plaintiff Philadelphia Indemnity Insurance Company ("Philadelphia Indemnity") alleges as follows:

## JURISDICTION AND VENUE

1.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1332(a)(l)-(a)(2) as there is complete diversity of citizenship between the parties (Philadelphia Indemnity is a citizen of Pennsylvania and Defendants are all citizens of New Mexico) and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

2.      Venue is proper in this District pursuant to 28 U. S. C. § 1391(b)(1), (2) because a substantial part of the events and omissions giving rise to the claim occurred in New Mexico and the defendants are all residents of New Mexico.

## PARTIES

3.      Philadelphia Indemnity is a Pennsylvania corporation with its principal place of business at One Bala Plaza, Suite 100, Bala Cynwyd, PA 19004 and is therefore a citizen of Pennsylvania.

4.      Defendants Desert Utility Paving, LLC ("Desert Utility"), Century Club Construction, LLC ("Century Club"), and Jweb Construction, LLC (collectively, "Defendant LLCs") are all New Mexico limited liability companies, each having its principal place of business in New Mexico and whose members are all citizens of New Mexico.

5.      Defendant Jeffrey S. Webster is a citizen of New Mexico.

6.      Defendant Bennie A. Cruz is a citizen of New Mexico.

## NATURE OF THE CASE

7.      To obtain surety bonds required for construction projects, on or about October 21, 2016, defendants, and each of them, executed a General Indemnity Agreement ("GIA") in favor of Philadelphia Indemnity.  A true and correct copy of the GIA is attached as Exhibit "A."

8.      Under paragraph 3 of the GIA, Defendants covenanted and agreed

> to indemnify and hold harmless Surety from and against any Loss sustained or incurred: (a) by reason of having executed or being requested to execute any and all Bonds; (b) by failure of Indemnitors or Principals to perform or comply with any of the covenants or conditions of this Agreement or any other agreement; and (c) in enforcing any of the covenants or conditions of this Agreement or any other agreement. The Indemnitors' obligation to indemnify the Surety shall also apply to any Bond renewals, continuations or substitutes therefore.

9.      "Default" is defined in the GIA as

Any instance or condition where Principal or Indemnitors: (ii) forfeit, breach, abandon, repudiate, default or be declared in default on any Bonded Contract; (iii) neglect or refuse to pay for any indebtedness for labor, materials, or services used in the prosecution of a Bonded Contract, (iv) fail to honor any obligation under this Agreement; . . . (vi) have any proceeding instituted against any of them that may have the effect of depriving any of them of the use of any part of the materials or equipment used in connection with the work under a Bonded Contract so as to hinder, delay or impede the normal and satisfactory progress of the work; (vii) with respect to any Indemnitors which are not individuals, dissolve or cease to continue their legal existence; . . . or (ix) violate any other written agreement with Surety.

10.      "Loss" is defined in the GIA as

Any and all liability, losses, costs, expenses, and fees of whatever kind or nature that Surety may sustain or incur as a result of executing any Bond, or as a result of the failure of Principal or Indemnitors to perform or comply with this Agreement.  Loss includes but is not limited to: (i) sums posted by Surety as a reserve for the payment of potential losses and/or expenses; (ii) all costs and expenses incurred in connection with investigating, paying or litigating any claim, and/or enforcing this Agreement, including but not limited to legal fees and expenses, professional and consulting fees, technical and expert witness fees and expenses; . . . and (v) all other amounts payable to Surety according to the terms and conditions of this Agreement or any other agreement between Surety and Principal or Indemnitors.

11.      In the event of any loss or potential loss or claim, defendants agreed at

Paragraph 4 of the GIA

to deposit immediately upon demand by Surety an amount equal to the greater of: (a) the amount of any reserve established by Surety in its sole discretion to cover any actual or potential liability for any Loss or potential Loss for which Indemnitors would be obliged to indemnify Surety hereunder; or (b) the amount of any Loss or potential Loss (including legal, professional, consulting, and expert fees and expenses) in relation to any claim or claims or other liabilities asserted against Surety as a result of issuing any Bond, as determined by the Surety in its sole discretion.

12.      As to the deposit of collateral under Paragraph 4 of the GIA, defendants

further agreed that

Principals and Indemnitors shall be obligated to deposit the amount of collateral demanded by Surety regardless of whether they dispute their liability for any Loss or potential Loss or assert any defenses to the validity or enforcement of this Agreement.

13.     Defendants also agreed at Paragraph 12 of the GIA that, at any and all times

Surety, including its designated agents, shall . . . have unrestricted access upon reasonable notice to review all books and records of Principals and Indemnitors, including all books and records pertaining to their financial condition, and to the status of each unbonded and Bonded Contract. Principals and Indemnitors agree to provide updated financial statements upon the Surety's request.   Principals and Indemnitors hereby authorize those with whom such Bonded Contracts are made to furnish to Surety all information concerning such contracts and the work thereunder.

Principals and Indemnitors also hereby authorize any bank, financial or lending institution, or depository to provide Surety with access to any bank statements or financial records or any other information or documents requested by Surety.   Principals and Indemnitors acknowledge that their duty to provide access to books and records under this Paragraph is specifically enforceable because Surety lacks an adequate remedy at law and their failure to provide access with Surety as required by this Paragraph will cause irreparable harm to as to justify injunctive relief compelling such access be provided.

14.     Defendants further covenanted at Paragraph 21 of the GIA that any and all funds from bonded projects would be held in trust for the benefit of Philadelphia Indemnity:

Principals and Indemnitors agree and expressly declare that all funds due or to become due under any Bonded Contract are impressed with an express, constructive, and/or resulting trust, whether in the possession of Principals or another and whether designated trust funds or not, for the benefit and payment of all persons to whom Principals incur obligations in the performance of such contract for which Surety would be liable under any Bond, which express, constructive, and/or resulting trust also inures to Surety's benefit.  This trust fund provision is enforceable under the law of any state in which (a) the Bonded Contract is being performed, (b) any Principal or Indemnitor is domiciled or doing business, or (3) sufficient minimum contacts exist with the Principal or Indemnitor so as to justify the exercise of personal jurisdiction over the Principal relative to the Bonded Contract.   All funds due or to become due under any Bonded Contract, which constitute trust funds, shall be used for the sole purpose of performance or payment of obligations under the Bonded Contract for

4

which Surety would be liable under its Bond(s), until that purpose has been fully satisfied.  If Surety discharges any such obligation, it shall be entitled to assert the claim of such person to the trust funds, in addition to Surety's rights as trust beneficiary of the trust funds.

15.     In the event any claim is asserted against Plaintiff on any bond issued by it on behalf of any defendant, defendants agreed

> Surety shall have the exclusive right, in its sole discretion, to decide and determine whether any claim, liability, suit or judgment made or brought against Surety on any Bond shall or shall not be paid, compromised, resisted, defended, tried or appealed, on the basis of Surety's belief that it is or could be liable or because the Surety deems it necessary or expedient to do so, and Surety's decision thereon shall be final and binding upon the Indemnitors.  Surety shall be entitled to indemnity for any and all disbursements made in good faith related to any such claim, liability, suit, or judgment, which term "good faith" shall be defined to encompass all disbursements made by Surety except those made with deliberate and willful malfeasance.  . . . .

16.     In the event of a "Default," Defendants agreed at Paragraph 7 of the GIA, that Surety, in its sole discretion, shall have the right, but not the obligation, to:

> (i) take possession of the work under any and all Bonded Contracts, and complete or consent to the completion of such Bonded Contracts at the expense of the Indemnitors; (ii) take possession of Principal and Indemnitors' equipment, materials and supplies whether at the worksite or elsewhere reasonably necessary for the completion of the Bonded Contracts; (iii) file suit to enforce any or all provisions of this Agreement; or (iv) without limitation, Surety shall be entitled to take any other action as the Surety, in its sole discretion, deems necessary to fulfill its obligations under any Bond.

17.     In strict and express reliance on these terms of the GIA and the promises and covenants of Defendants therein, and at their express request, Philadelphia Indemnity issued contract bonds for various projects and obligees in the State of New Mexico and elsewhere to enable Defendant Desert Utility and, in one instance, Defendant Century Club (Bond No. PB03228301847, Albuquerque Bernalillo County Water Authority, as obligee) to be awarded contracts and subcontracts for construction projects (collectively, "the Bonds") as follows:

| Bond No. | Obligee | Project Name | Effective Date | Penal Sum |
|---|---|---|---|---|
| PB03228301728 | Santo Domingo Pueblo | Trail Reconstruction | 10/21/2016 | $1,294,187 |
| PB03022830176 | North I 25 Corp. Center, LLC | Northpoint Work Order | 11/9/2016 | $918,727 |
| PB03228301788 | Div. of Eng. Services | Gabriela Good Pueblo of Sandia | 12/9/2016 | $40,981 |
| PB03228301792 | Pulte Homes | Stormcloud | 12/21/2016 | $1,095,934 |
| PB03228301835 | Village of Bosque Farms | Jackson Acquia Crossing | 2/17/2017 | $61,970 |
| PB03228301836 | City of Farmington | Municipal Utilities | 2/22/2017 | $1,448,341 |
| PB03228301847 | Albuquerque Bernalillo Co. | 4th Street Replacement | 3/1/2017 | $496,756 |
| PB03228301892 | ESA Constr., Inc. | NMSU | 4/17/2017 | $434,500 |
| PB03228301901 | Gardner-Zemke | Metal Building | 4/24/2017 | $934,350 |
| PB03228301938 | Pueblo of Zuni | Scattered Housing | 6/5/2017 | $708,791 |
| PB03228301950 | San Juan County | CR350/CR950 | 6/23/2017 | $833,181 |
| PB03228301955 | Ute Mountain Ute Tribe | Towaoc Water Improvement (Colorado) | 7/6/2017 | $2,892,186 |
| | | | TOTAL | $11,159,904 |

18.     The Bonds guaranteed Defendant Desert Utility's and Century Club's completion of the contracts and/or subcontracts and their payments to subcontractors and suppliers who provided goods and services on the bonded contracts and subcontracts detailed above.   Philadelphia Indemnity's exposure on the Bonds as issued was in excess of $11,159,904.

19.     Philadelphia Indemnity has received claims on a number of the bonds from subcontractors and suppliers of the Defendant LLCs.  Philadelphia Indemnity has had to pay one such claimant, Armour Pavement, the amount of $95,163.60 on Bond No. PB03228301792.

20.     Additionally, two obligees, ESA Construction, Inc. and Pulte Homes have alleged the failure of Desert Paving to perform its obligations on the respective bonded contracts for those obligees.   By letter dated December 6, 2017, ESA Construction has

6

terminated Desert Utility and made demand on Philadelphia Indemnity under its performance Bond, Bond No. PB03228301892.  Philadelphia Indemnity does not know what amount of work has been completed, what amounts ESA Construction holds, and does not know, ultimately, what the amount of damages it will be responsible for under the performance bond.

21.    A third obligee, Gardner-Zemke, has questioned the ability of Desert Paving to complete that bonded contract given Desert Paving has informed Gardner-Zemke it will be unable to return to the site.  Liquidated damages will accrue for any delay and Philadelphia Indemnity will be required to answer in damages in an unknown amount under its performance bond, Bond No. PB03228301901.

22.    A fourth obligee, Santo Domingo Pueblo, has informed Philadelphia Indemnity that the completion date for its project has passed, the work is not complete, and liquidated damages are accruing.  Philadelphia Indemnity will be required to answer in damages in an unknown amount under its performance bond, Bond No. PB03228301728.

23.    Another obligee, City of Farmington, has informed Philadelphia Indemnity that Desert Utility has pulled off the bonded project to perform work on the municipal utilities.  Philadelphia Indemnity will be required to answer in damages in an unknown amount under its performance bond, Bond No. PB03228301836.

24.    In discussions with Defendants, Defendants Webster and Cruz have admitted that Desert Paving and Century Club have stopped working on all projects except for the Ute Mountain Ute Tribe project (Bond No. PB03228301955; Towaoc Water Improvement).

25.    By letter dated December 2, 2017, Philadelphia Indemnity made demand under the terms of the GIA, specifically, Paragraph 4, to deposit funds with Philadelphia Indemnity in the amount of $850,000 as collateral by December 4, 2017 and provided wire transfer information.  A true and correct copy of the Dec. 2, 2017 demand is attached as Exhibit "B."

26.     In breach of their obligations under the GIA, Defendants failed to comply with the demand for collateral.

27.     In conjunction with the demand for collateral under Paragraph 4 of the GIA, Philadelphia Indemnity also made demand under Paragraph 12 for access to Defendant LLCs' books and records to determine the extent of the default, the status of each bonded contract, the bonded contract funds held by the obligees, and the amounts payable to potential payment bond claimants, all in an effort to assess the potential loss and to minimize the Loss to Philadelphia Indemnity.

28.     In further breach of their obligations under the GIA, Defendants have refused Philadelphia Indemnity access to the pertinent books and records of the Defendant LLCs.

29.     In addition, Defendants agreed under the terms of the GIA to hold all funds due or to become due under any bonded contract as trust funds to be used for the sole purpose of performance or payment of obligations under the bonded contracts for which Philadelphia Indemnity would be liable under the Bonds, until that purpose has been fully satisfied.

30.     Pulte Homes paid Desert Utility for the work performed by its subcontractor, Armour Pavement, but Desert Utility has not paid those funds to Armour Pavement, resulting in the claim against Philadelphia Indemnity by that unpaid subcontractor which Philadelphia Indemnity was required to pay.

31.     Pursuant to the express terms of the GIA, Defendants are in Default and are liable for any Loss incurred by Philadelphia Indemnity.

32.     Philadelphia Indemnity has incurred, and will incur, attorneys' fees and costs and other expenses in connection with the claims on the bonds and in enforcing the terms of the GIA, all of which are recoverable under the terms of thereof.  The final amount will be proved at trial in this matter.

## COUNT ONE

### (Specific Performance – Injunctive Relief)

33.     Philadelphia Indemnity incorporates by reference Paragraphs 1 through 32 as though set forth fully in this claim for relief.

34.     Plaintiff issued the Bonds on behalf of Desert Paving and Century Construction at their request and that of their owners, defendants Jeffrey S. Webster and Bennie A. Cruz.

35.     Philadelphia Indemnity has and will incur losses and expenses by virtue of and as a direct consequence of the issuance of the Bonds.

36.     Philadelphia Indemnity will be subject to immediate or irreparable harm, in that the principals on the Bonds may be unable to perform or meet their specific obligations under the GIA and/or Philadelphia Indemnity will be unable to secure enforcement of its unconditional rights under the GIA.

37.     It is plain that, in evaluating the balance of equities, they favor the unconditional rights of Philadelphia Indemnity under the GIA and the entitlement of Philadelphia Indemnity to enforce such unconditional rights and to require Defendants to specifically perform their clear obligations thereunder.

38.     By the express terms of the GIA, Defendants agreed that there is no adequate remedy at law and their refusal to grant Philadelphia Indemnity access to the books and records "will cause irreparable harm to as to justify injunctive relief compelling such access be provided."

39.     Based on the failure of Defendants as alleged, Philadelphia Indemnity is entitled to injunctive relief in the form of an order compelling Defendants, and each of them, to specifically perform pursuant to the terms of the GIA by: (1) providing access to Defendants LLCs' books and records; (2) depositing collateral with

Philadelphia Indemnity in an amount sufficient to discharge any anticipated loss; and (3) to prohibit Defendants from transferring or otherwise secreting their assets until the collateral is provided and the contract proceeds accounted for.

**COUNT TWO**

**(Breach of Contract)**

40.     Philadelphia Indemnity incorporates by reference Paragraphs 1 through 39 as though set forth fully in this claim for relief.

41.     Defendants Desert Utility and Century Club have defaulted on their bonded contracts and have failed to pay their respective subcontractors and suppliers.

42.     Despite demand, Defendants have failed and refused, and continue to fail and refuse, pursuant to the terms of the GIA, to deposit the collateral as demanded in the amount of $850,000 to protect Philadelphia Indemnity from Loss as required by the GIA.

43.     Philadelphia Indemnity has performed all of the terms, covenants, and conditions required on its part to be performed under the terms of the GIA.

44.     As a direct and proximate result of the breach of the GIA by Defendants, and each of them, Philadelphia indemnity has incurred, and will continue to incur, losses and expenses in an amount according to proof, along with attorneys' fees, expenses and costs incurred in prosecuting this action.

**COUNT THREE**

**(Injunctive Relief- *Quia Timet* Rights against All Indemnitors)**

45.     Philadelphia Indemnity hereby incorporates by reference the allegations contained in paragraphs 1 through 4 above, as though fully set forth herein.

46.     Under the equitable doctrine of *quia timet,* Philadelphia Indemnity is entitled to have the Indemnitors place funds or other security with Philadelphia

Indemnity sufficient to cover any and all claims, demands and liability for losses, costs, and expenses of whatsoever kind or nature, including but not limited to court costs, counsel fees, costs of investigation, consultant fees, accountant fees, engineer or construction that Philadelphia Indemnity may sustain or incur by reason or consequence of having issued Bonds on behalf of Defendants and/or Defendants' default under the GIA as set forth more fully above.

47.     The Indemnitors have failed to place Philadelphia Indemnity in such funds in direct contravention to Philadelphia Indemnity's *quia timet* rights.  Unless Defendants post the collateral demanded, Philadelphia Indemnity will not be adequately secured regarding its obligations under the Bond.

48.     Philadelphia Indemnity is without a plain, speedy, or adequate remedy at law, pecuniary compensation would not afford adequate relief, it would be extremely difficult to ascertain the amount of compensation which would afford adequate relief, and Philadelphia Indemnity will be irreparably and permanently injured unless this Court grants the injunctive and equitable relief requested herein.

49.     Philadelphia Indemnity is entitled to preliminary and permanent injunctive relief enforcing its *quia timet* rights and granting Philadelphia Indemnity a freeze on all assets and property in which Defendants have an interest to remain in place until Philadelphia Indemnity Insurance Company has been placed in funds in the amount of $850,000.00.

## COUNT FOUR

### (Declaratory Relief)

50.     Philadelphia Indemnity incorporates by reference Paragraphs 1 through 49, inclusive, as though fully set forth herein.

51.      An actual controversy has arisen and now exists between Philadelphia Indemnity and Defendants.  Philadelphia Indemnity contends that Defendants are obligated to provide access to the pertinent books and records, that Defendants are required to deposit collateral in an amount sufficient to discharge any anticipated loss, and to reimburse Philadelphia Indemnity for amounts incurred and that will be incurred to satisfy the obligations as surety on the Bonds.

52.      Philadelphia Indemnity desires a judicial determination of the respective rights and duties of the parties with respect to the meaning and interpretation of the GIA.  In particular, Philadelphia Indemnity desires a declaration that, under the terms of the GIA: (1) Defendants are obligated to provide access to their books and records and (2) to deposit collateral as demanded in an amount sufficient to discharge any loss or anticipated loss; and (3) to hold all proceeds from bonded contracts in trust for the benefit of Philadelphia Indemnity.

## PRAYER FOR RELIEF

WHEREFORE, Philadelphia Indemnity Insurance Company prays for relief against Defendants as follows:

1.      On Count One, for an order compelling Defendants to perform their specific obligations under the GIA to provide access to the pertinent books and records, to deposit collateral as demanded, and to hold all bonded contract proceeds in trust in favor of Philadelphia Indemnity, and to prohibit Defendants from transferring or otherwise secreting their assets until the collateral is provided and the bonded contract proceeds accounted for;

2.      On Count Two, for judgment against Defendants, jointly and severally, in the amount of damages incurred by Philadelphia Indemnity as a result of issuing bonds on behalf of Defendants, which damages are incapable of determination at this time;

3.      On Count Three, for preliminary and permanent injunctive relief requiring Defendants to place Philadelphia Indemnity in funds by money or property, real or personal, and restraining each of the Defendants from transferring, disposing or otherwise liquidating any property owned by them beyond reasonable living expenses, during the pendency of this matter until Philadelphia Indemnity has been placed in funds as requested herein;

4.      On Count Four, the declaration that Defendants are obligated under the GIA to provide access to their books and records, to post collateral as demanded, and to hold all proceeds from bonded contracts in trust.

DATED this 6th day of December, 2017.

JENNINGS HAUG & CUNNINGHAM, LLP


/s/ Edward Rubacha_____
Edward Rubacha
Chad L. Schexnayder
Attorneys for Plaintiff